Filed 1/23/26  PI Properties No. 79 v. Romero CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PI PROPERTIES No. 79, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>EVERILDA ROMERO et al.,<br><br>    Defendants and Respondents. | B343585<br><br>(Los Angeles County<br> Super. Ct. No. 21STCV13311) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly Fujie, Judge.  Reversed with directions.

Artiano Shinoff and Paul V. Carelli for Plaintiff and Appellant.

Allen Matkins Leck Gamble Mallory & Natsis, Rachel M. Sanders, Charles D. Jarrell and Gabriela S. Perez for Defendants and Respondents.

**INTRODUCTION**

In 2018, appellant PI Properties No. 79, LLC (PI Properties) bought a three story, 15-unit apartment building from respondent Fremont Oaks, LLC (Fremont). Two years after the sale, PI Properties received a citation from the City of Los Angeles (City) indicating 12 of the 15 units were unpermitted. Two years after receiving the citation, PI Properties sold the property at a loss.

PI Properties sued Fremont and its principal, respondent Everilda Romero, for fraud and breach of contract, among other claims. Fremont and Romero demurred, arguing the terms of the sale contract barred any claim by PI Properties. The trial court agreed, sustained the demurrer without leave to amend, and entered judgment for Fremont and Romero. We conclude the contract does not bar fraud claims, and therefore reverse the judgment.

**FACTS AND PROCEDURAL BACKGROUND**

I.     *The Sale*

In May 2018, Romero, acting on behalf of Fremont, hired Kevin Russell, a real estate broker, to sell a three-story apartment building on Alhambra Avenue in Los Angeles.[1] Romero instructed Russell to advertise the property as a 15-unit apartment building containing "bachelor" apartment units and valued at $2 million; Romero also told Russell to inform potential buyers that each individual unit was valued at $133,333, and the market rental rate for each unit would be $935 per month. Russell did so,

---

[1]     Because a demurrer admits all properly pled allegations of the operative complaint, we draw our statement of facts from those allegations. (*Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 279 (*Brown*).)

and contacted Srinivas Yalamanchili, an agent for PI Properties, with the listing.

Within days, Yalamanchili signed a contract to purchase the property. The contract describes the property as "[a] 15 Unit Residential Building and the Fee Simple Land in Which It Is Situated." Section 23 of the contract provides: "It is understood and agreed that the Property is being sold 'as is'; that Buyer has, or will have prior to the closing Date, inspected the Property; and that neither Seller nor Agent makes any representation or warranty as to the physical condition or value of the Property or its suitability for Buyer's intended use. . . . Buyer agrees, and represents and warrants that upon Closing, Buyer will purchase the Property 'as is' and solely on reliance on its own investigation of the Property. Seller had no obligation to repair, correct or compensate Buyer for any Property Condition, and upon closing, Buyer shall be deemed to have waived any and all objections to the Property Condition, whether or not known to Buyer. Upon Closing, Buyer hereby waives, releases, acquits, and forever discharges Seller, and Seller's agents, directors, officers, and employees to the maximum extent permitted by law from any and all claims, actions, causes of action, demands, rights, liabilities, damages, losses, costs expenses, or compensation whatsoever, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way growing out of or connected with Property Condition." That same provision also contained a waiver of the buyer's rights under Civil Code section 1542,[2] printed in capital letters.

---

[2] All future statutory references are to the Civil Code, unless otherwise designated.

Yalamanchili inspected the property, observing the 15 units. The inspection did not reveal anything out of place or any cause for suspicion. Yalamanchili assigned his rights under the contract to PI Properties, which completed the purchase in July 2018.

## II. *The Citation*

In March 2020, PI Properties received a citation from the City, explaining that the building's certificate of occupancy only allowed for three residential units, and that the remaining 12 units were unpermitted. PI Properties was ordered to either demolish the extra units or obtain the required permits, and a re-inspection was scheduled for 2021.

At first, PI Properties believed the City had made a mistake on the certificate of occupancy, and asked Russell to contact Romero to obtain the original planning documents so the mistake could be corrected. Fremont had been the owner when the building was constructed, so both PI Properties and Russell believed Fremont would have documents showing the City's error. No such documents were forthcoming. PI Properties concluded Fremont must have illegally converted the building into a 15-unit building and failed to disclose the unpermitted construction. In 2022, PI Properties sold the property at a loss.

## III. *The Lawsuit*

PI Properties sent Fremont and Romero a demand for arbitration. (*PI Properties No. 79, LLC v. Romero* (Nov. 14, 2023) No. B317905 [nonpub. opn.].) Fremont agreed to arbitrate, but Romero refused. (*Ibid.*) In April 2021, PI Properties sued Romero, asserting various causes of action including fraud, breach of contract, and conspiracy. PI Properties attempted

4

unsuccessfully to compel Romero to arbitration; when that failed, the parties stipulated to the filing of a second amended complaint joining Fremont as a defendant.

Fremont and Romero demurred to the second amended complaint on the grounds that PI Properties lacked standing—it had failed to allege it was a party to the purchase contract, which was signed by Yalamanchili "and/or his assignee." The trial court sustained the demurrer on this ground, and on the alternate ground that all claims were barred by section 23 of the contract. PI Properties was granted leave to amend.

PI Properties then filed the operative third amended complaint (TAC), asserting causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, failure to disclose material facts, fraudulent concealment,[3] intentional misrepresentation, constructive fraud, negligent misrepresentation, and breach of express warranty.

Fremont and Romero demurred, arguing first that PI Properties got exactly what the contract contemplated, a 15-unit apartment building and the land it sits on, and second that if PI Properties had made its own investigation of the property it would have discovered the certificate of occupancy. Additionally, they argued Romero could not be personally liable for any of the claims other than intentional misrepresentation, because Romero was not a party to the contract and owed no personal duty to PI Properties. In opposition, PI Properties did not discuss its contract claims and did not ask for permission to amend. Instead it focused on the fraud causes of action, which it contended were properly pled and could not be

---

[3]     The claim is titled "fraudulent deceit," but the allegations assert concealment.

5

barred by the contract. It argued Romero could be personally liable on each fraud claim under an alter ego theory.

The trial court sustained the demurrer without leave to amend. It ruled the claims for breach of contract, breach of the implied covenant, and breach of express warranty were barred because the contract had not been breached: the contract provided for the "as-is" transfer of a 15-unit apartment building and the land under it, which is exactly what PI Properties got. The court ruled the claims for failure to disclose material facts, intentional misrepresentation, fraudulent concealment, constructive fraud, and negligent misrepresentation could not proceed for two reasons. First, there was never any representation made about the permitted status of the units, so there was no misrepresentation. Second, section 23 of the contract obliged PI Properties to conduct its own investigation of the property, and therefore PI Properties could not allege justifiable reliance. The trial court did not reach the alter ego issue.

The court entered judgment in favor of Fremont and Romero. PI Properties timely appealed.

## DISCUSSION

We review the sustention of a demurrer de novo. (*Brown, supra*, 247 Cal.App.4th at p. 279.) We review the decision to deny leave to amend for abuse of discretion. (*Ibid.*) The plaintiff has the burden of showing a reasonable possibility that any defect could be cured by amendment. (*Ibid.*)

On appeal from an order sustaining a demurrer, the plaintiff may raise legal theories not presented below. (*Kruitbosch v. Bakersfield Recovery Services, Inc.* (2025) 114 Cal.App.5th 200, 210.) Because we review the trial court's ruling and not its rationale, and a demurrer presents questions of law,

6

the defendant may do likewise. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 732, fn. 2.) Finally, the issue of leave to amend remains open on appeal, even if leave was not sought below. (Code Civ. Proc., § 472c, subd. (a).)

I.     *Breach of Contract*[4]

A claim for breach of contract has four elements: (1) the existence of a contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damages. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Here, the TAC alleged Fremont breached the sale contract "by failing to deliver a 15-unit residential building."[5] PI Properties argues the term "15-Unit Residential Building" as it appears in the contract is ambiguous. It is not.

According to PI Properties "[t]he ambiguity is that this term is silent as to whether the apartments within the building are permitted and approved by the City for occupancy or not." But this is not an ambiguity in the term; it is a failure of the contract to account for a particular risk. PI Properties does not dispute that the building had 15 units, or that it was residential in

---

[4]     PI Properties discusses its causes of action for breach of contract, breach of the implied covenant, and breach of express warranty as a single unit. Therefore, we do likewise. PI Properties has forfeited any argument that its claims for breach of the implied covenant or breach of express warranty should survive individually. (*Shaw v. Los Angeles Unified School Dist.* (2023) 95 Cal.App.5th 740, 754 (*Shaw*).)

[5]     The TAC also alleged Fremont breached the contract by failing to deliver a list of recent renovations and upgrades. PI Properties has abandoned that issue on appeal by failing to argue it. (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1136.)

character (and was indeed mostly occupied at the time of sale). The contract's failure to be more precise in the way PI Properties now wishes it had been does not render the contract ambiguous.

At oral argument, PI Properties explained that it "assumed" the units were permitted. However, nothing in the subject matter of the transaction makes that assumption part of the contract. Parties may rationally contract to purchase unpermitted buildings with the intent of obtaining the required permits after the fact. The citation received by PI Properties gave them the option to cure the deficiency by doing just that. In the absence of disclosure from Fremont, it may have been reasonable to assume the units were permitted. However, the remedy for that failure to disclose is an action under the statutory and common law fraud theories discussed below.

PI Properties relies on general citations to authorities discussing the use of extrinsic evidence. But as those authorities explain, extrinsic evidence cannot be used to modify the terms of the contract as they exist. (*Denver D. Darling, Inc. v. Controlled Environments Const., Inc.* (2001) 89 Cal.App.4th 1221, 1236; *John B. Kilroy Co. v. Douglas Furniture of Cal., Inc.* (1993) 21 Cal.App.4th 26, 33.) That is what PI Properties seeks to do; insert the modifier "permitted" into the contract terms. It is not there, and in the absence of authority permitting us to do so, we decline to add it.

The trial court did not err in finding PI Properties failed to properly plead its breach of contract claims.


II.     *Failure to Disclose Material Facts*

The third cause of action in the TAC alleges violations of the Los Angeles Municipal Code and the Civil Code. PI Properties has properly pled

8

a violation of the Civil Code; therefore we need not discuss the alleged violation of the Los Angeles Municipal Code.

Section 1102.3 requires the seller of any "single-family real property" to deliver a disclosure statement in the form set forth by section 1102.6. The term "single-family real property" is defined to cover "real property improved with one to four dwelling units." (§ 1102, subd. (b), Bus. & Prof. Code, § 10018.08.) Section II.C.4 of the statutory form requires disclosure of "[r]oom additions, structural modifications, or other alterations or repairs made without necessary permits." (§ 1102.6, subd. (a).) Section II.C.10 of the form requires disclosure of "zoning violations" and "nonconforming uses." (*Ibid.*) A seller who fails to fill out and supply this disclosure may be liable to the buyer for any damages caused. (§§ 1102.4 and 1102.13.) The seller's obligation to provide the form cannot be waived by the buyer. (§ 1102, subd. (c).)

PI Properties argues Fremont was obliged to supply this form because the property was permitted for three units; because it was only legal to inhabit those three units, they were the only "dwelling units" on the property. Under these circumstances, we agree. Fremont built the extra units without permits. One express object of the statute is to compel disclosure of unpermitted construction. (§ 1102.6, subd. (a).) Allowing Fremont to avoid that disclosure because they constructed so many unpermitted units would run counter to the purpose of the statute and permit Fremont to take advantage of its own wrong. (§ 3517.)

Fremont and Romero briefly argue this cause of action requires pleading of the ordinary fraud elements, including misrepresentation and justifiable reliance. However, they cite no authority in support of that point, and it is therefore forfeited. (*Shaw, supra,* 95 Cal.App.5th at p. 754.)

9

III. *Fraud*[6]

The elements of a claim for intentional misrepresentation are (1) misrepresentation of a material fact, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) damages. (*Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1498 (*Manderville*).) The TAC alleged that Fremont and Romero made five misrepresentations: "(1) the Property was a fifteen-unit apartment complex, (2) that the Property included bachelor apartment units, (3), that the Property total value was not less than $2,000,000, (4) that each of the 15 units were valued at $133,333 per unit, (5) that each of the fifteen unit's market value was $935 per month." Fremont and Romero argue none of these were misrepresentations, and even if they were, PI Properties should not have relied on them. We are not persuaded.

A. *Misrepresentations*

Fremont and Romero specifically discuss only the first two alleged misrepresentations, which they claim were not misrepresentations because the building had 15 physical units and each was designed as a "bachelor" unit. We need not discuss that argument, however, because Fremont and Romero tacitly concede the latter three alleged misrepresentations, regarding the value of the property, were indeed false.

As to those misrepresentations, Fremont and Romero argue the contract "waives" any representations regarding the condition or value of the

---

[6] The parties discuss the causes of action for intentional misrepresentation, fraudulent concealment, constructive fraud, and negligent misrepresentation as a single unit. Therefore, we do likewise.

10

property.  But no contract can waive a claim for fraud in its own inducement. (§ 1668; *Manderville, supra,* 146 Cal.App.4th at pp. 1499–1501.)

"All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (§ 1668.)  *Manderville* applied that rule to real estate contracts, and governs here.

In *Manderville*, the plaintiff buyers purchased property based on the broker's express representation that the lot could be split into two. (*Manderville, supra,* 146 Cal.App.4th at pp. 1489–1492.)  The contract advised the buyers of their right to inspect and investigate, gave them a time period to do so, and provided that the broker made no guarantee and would not be responsible for the condition of the property.  (*Id.* at pp. 1492–1493.) After the sale, the buyers discovered the lot could not be split.  (*Id.* at pp. 1493–1494.)

The buyers sued the broker for fraud and negligent misrepresentation. (*Manderville, supra,* 146 Cal.App.4th at p. 1494.)  The trial court granted summary judgment, finding the contract absolved the brokers of any responsibility and prevented the buyers from showing justifiable reliance. (*Id.* at pp. 1495–1496.)  The court of appeal reversed, explaining that section 1668 prevents a party from using a contract to forestall its own fraud liability.  (*Id.* at p. 1500.)  Further, the panel explained, fraud in the inducement renders a contract voidable, and voiding the contract would void the waiver provision.  (*Id.* at pp. 1500–1501.)

Fremont and Romero attempt to distinguish *Manderville* by pointing to differences in the specific contractual language here.  But these differences are not relevant.  A party cannot contract out of its own fraud liability.

11

(*Manderville, supra,* 146 Cal.App.4th at p. 1500.) The precise form of the attempt to do so does not matter.

Fremont and Romero compare the situation here to *Bank of America v. Vannini* (1956) 140 Cal.App.2d 120. That case is not on point. The transaction at issue there was the multi-stage purchase of a gold mine, in which the buyer obtained title temporarily in exchange for a promise to clear and drain the mine within 14 months; if he was satisfied with what he found after that, he could commence payment and keep the mine. (*Id.* at pp. 122–123.) After the buyer took 13 *years* to clear the mine, the seller sued for payment and the buyer cross-complained for fraud, alleging the seller told him there was gold in the mine when there was none. (*Id.* at pp. 122–126.) The court of appeal found the cross-complaint barred by the statute of limitations and concluded the buyer could not justifiably rely on any representations by the seller because the contract gave him 14 months to conduct his own investigation of the mine. (*Id.* at pp. 126–132.)

*Vannini* bears no resemblance to the situation here. This was not a multi-phase transaction with time limits, in which one party is given title to the property for the express purpose of investigating its natural resources. This was a single, straightforward transaction involving a multi-unit residential building.

B.    *Justifiable Reliance*

Justifiable reliance is ordinarily a question of fact and may only be determined on demurrer if reasonable minds could reach only one conclusion. (*Amiodarone Cases* (2022) 84 Cal.App.5th 1091, 1111.) Fremont and Romero argue the language of the contract obligating PI Properties to conduct its own

12

investigation should be sufficient to eliminate justifiable reliance as a matter of law. This is incorrect for two reasons.

First, this argument was made and rejected in *Manderville*. The defendant there argued that the buyer's own investigation would have revealed the legal impossibility of splitting the lot. (*Manderville, supra,* 146 Cal.App.4th at p. 1502.) But the court of appeal held that was irrelevant, explaining, "negligence on the part of the plaintiff in failing to discover the falsity of the defendant's statement is no defense when the misrepresentation was intentional." (*Ibid.*) If a party cannot contract out of its own fraud liability, "directly or indirectly," it cannot contractually negate the elements of that liability. (See § 1668; *Manderville, supra,* 146 Cal.App.4th at pp. 1499–1503.)

Second, the argument depends on facts outside the four corners of the complaint. The complaint does not allege that an investigation would have turned up the certificate of occupancy or the lack of permits. Fremont and Romero argue it would, based on their request for judicial notice made below. But the trial court denied judicial notice of any facts related to the certificate of occupancy or permits, and Fremont and Romero do not challenge that aspect of the order.

The TAC properly alleges its fraud claims.

IV. *Alter Ego*

Having concluded that certain claims should survive, we now reach the alter ego issue. PI Properties asserts its causes of action for failure to disclose material facts, fraudulent concealment, constructive fraud, and

negligent misrepresentation against Romero on an alter ego theory.[7]  Alter ego is not a claim for substantive relief; it is a procedural device to disregard a corporate entity and hold an individual liable for the obligations of the corporation.  (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 418–419.)  To employ this device, a plaintiff must plead two elements: (1) a unity of interest between the corporation and the individual such that no real separation exists, and (2) an inequitable result if the alleged bad acts are treated as those of the corporation alone.  (*Id.* at p. 417.)

Romero argues PI Properties failed to properly plead an alter ego theory because all the relevant allegations were made on information and belief.  We agree.

The substance of the TAC's alter ego allegations appears in paragraph seven and consists largely of boilerplate allegations relating to Romero's control over Fremont.  These allegations are made "upon information and belief."

When a plaintiff alleges facts on information and belief, they must allege the basis for their belief.  (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 551, fn. 5 (*Doe*).)  PI Properties has not done so.

According to PI Properties, when facts are peculiarly in the defendant's possession, a plaintiff may plead on information and belief.  This conflates two separate doctrines.  The doctrine of less particularity permits a plaintiff to plead with less specificity when the defendant has better knowledge of the facts, provided the pleading gives sufficient notice to allow the preparation of a defense.  (*Doe, supra,* 42 Cal.4th at p. 549–550.)  This is separate from the

---

[7]  PI Properties argues on reply that Romero can be held responsible for certain causes of action on a direct theory of liability.  Because these arguments were raised for the first time on reply, they have been forfeited. (*Sachs v. Sachs* (2020) 44 Cal.App.5th 59, 66.)

14

general rule that a plaintiff may plead facts that are not within its personal knowledge on information and belief, so long as the plaintiff has information to support that belief. (*Id*. at p. 550.) Here, PI Properties has supplied no such information. The alter ego theory is not properly pled.

V.    *Leave to Amend*

As noted above, PI Properties bears the burden of demonstrating that any defect in its pleadings could be cured by amendment. (*Brown, supra*, 247 Cal.App.4th at p. 279.) PI Properties has not carried this burden. Its briefs mention the possibility of amendment only once, in connection with an additional fraud theory it claims appears on the face of its pleading. PI Properties does not directly request a chance to amend any cause of action or theory of liability. Therefore, any such chance has been forfeited. (*Shaw, supra,* 95 Cal.App.5th at p. 754.)

## DISPOSITION

The judgment of the trial court is reversed. The trial court is directed to vacate its order sustaining the demurrer without leave to amend, and enter a new order (1) overruling the demurrer to the cause of action for intentional misrepresentation as to Fremont and Romero, and (2) overruling the demurrer to the causes of action for failure to disclose material facts, fraudulent concealment, constructive fraud, and negligent misrepresentation as to Fremont only. PI Properties shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


COLLINS, J.


TAMZARIAN, J.


16